## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

RONALD SILVER and NICOLE CHAVEZ,
individually and as personal representatives of
the ESTATE OF JAYDON CHAVEZ-SILVER,

      Plaintiffs,

      v.                                      Civ. No. 23-448 MV/SCY

EP LOYA GROUP, LP, YOUNG AMERICA
INSURANCE COMPANY, FRED LOYA
INSURANCE AGENCY, INC., LOYA
INSURANCE COMPANY, RODNEY D.
YOUNG INSURANCE AGENCY, INC.,
NATIONAL INSURANCE, YVETTE
LERMA, and MARK GROVES,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      Plaintiffs are the parents of a teenager who was tragically killed in a drive-by shooting. The owner of the vehicle used in the shooting, Felicia Villasenor, had previously met with an insurance broker, Yvette Lerma, to add the vehicle to her existing insurance policy. But Villasenor failed to pay her monthly insurance premium just prior to the drive-by shooting. The insurance company therefore took the position that the policy had lapsed and refused to defend or settle the claim Plaintiffs brought against the driver and Villasenor. Defendants removed this case from state court to federal court, alleging that Lerma—a non-diverse defendant—is fraudulently joined. Plaintiffs filed the present Motion to Remand to state court, arguing that she is not. Because Defendants have failed to prove there is no possibility that Lerma could be found liable, the Court should reject their arguments of fraudulent joinder and grant the Motion to

Remand (Doc. 11).[1] Further, if the Court accepts this recommendation and grants Plaintiffs'

motion to remand based on its analysis of the claims against Defendant Lerma, no need exists to

address Defendants' second argument: that Plaintiff also fraudulently joined Defendant Fred

Loya Insurance Agency, Inc.

## BACKGROUND

On June 26, 2015, Nicholas Gonzales used his mother's Nissan Maxima to drive multiple

intoxicated teenagers to a house on Nakomis Drive in Albuquerque, where they shot at the house

as they drove by. Doc. 1-2 at 5, Complaint for Insurance Bad Faith ("Compl.") ¶¶ 18-19.[2] One of

the bullets fired from the car broke through the kitchen window and struck Jaydon Chavez-

Silver, a teenager who happened to be attending a party at the Nakomis house and the son of

Plaintiffs Ronald Silver and Nicole Chavez. Compl. ¶¶ 1-2, 19. Jaydon Chavez-Silver later

passed away as a result of the gunshot wound. Compl. ¶ 23.

Felicia Villasenor owned the Nissan Maxima used in the shooting. On May 6, 2015—

about a month and a half before the shooting—she had added the Nissan Maxima to her existing

insurance policy for a Kia Sentra issued by the Loya Defendants.[3] Compl. ¶¶ 16-17, 24, 34-35.

Villasenor purchased the Nissan for Gonzales' sixteenth birthday and allowed him to drive it.

Compl. ¶¶ 16-17.

---

[1] The Honorable Martha Vázquez referred this case to me to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 28.

[2] For purposes of this motion, the facts in the complaint are accepted as true.

[3] The Complaint refers to the insurance companies in question as the "Loya Defendants," elsewhere defined as "Defendants Young America Insurance Company, Fred Loya Insurance Agency, Inc., Loya Insurance Company, Rodney D. Young Insurance Agency, Inc., and multiple other entities are alter-ego subsidiaries of and/or members of a joint venture or common enterprise with Defendant EP Loya." Compl. ¶ 4.

Plaintiffs Silver and Chavez filed a wrongful-death lawsuit against Villasenor and Gonzales in state court. Compl. ¶ 51. The Loya Defendants denied coverage and refused to provide a defense on grounds that the loss occurred outside the policy territory. Compl. ¶¶ 59-90. Defendants' position is that the policy renewed on a monthly basis; that is, Villasenor agreed to pay premiums each month by automatic charges to her credit card. Doc. 1 ¶¶ 27, 33. On June 3, 2015, Villasenor's credit card declined payment of the monthly premium; therefore, the policy lapsed on June 10, 2015 (sixteen days before the drive-by shooting). Doc. 1 ¶¶ 30-36; Compl. ¶ 71.

Plaintiffs Silver and Chavez subsequently obtained a judgment in excess of $71 million (including prejudgment interest), which Villasenor and Gonzales lack the resources to pay. Compl. ¶¶ 99-103. In the present lawsuit, Plaintiffs bring claims against the Loya Defendants, contending they are liable to pay the judgment, and bringing causes of action for (1) violations of the Trade Practices and Frauds Act, (2) bad faith claims handling, (3) bad faith failure to negotiate with Plaintiffs; and (4) illegal dealing in violation of the Trade Practices and Frauds Act. Compl. ¶¶ 105-40. Neither Villasenor nor Gonzales is a party to the present case.

Plaintiffs filed this Complaint in state court on April 13, 2023. Doc. 1-2 at 5.[4] On May 22, Defendant EP Loya Group, LP removed the case to federal court, citing diversity jurisdiction. Doc. 1. No party disputes that the amount in controversy requirement is met with respect to the $71 million judgment. As it pertains to citizenship, the Notice of Removal alleges the following:

---

[4] The copy of the state court complaint attached to the Notice of Removal transposes pages 13 and 14 as well as 18 and 19. The pages were in the correct order when the complaint was filed in state court, meaning the removing defendant did not file a true copy of the pleadings as required by 28 U.S.C. § 1446(a). This is likely a "*de minimis* procedural defect" that is curable and does not affect jurisdiction. *See Countryman v. Farmers Ins. Exch.*, 639 F.3d 1270, 1272 (10th Cir. 2011). If the case remains in federal court, the Court will order the removing defendant to cure this defect.

- Plaintiffs are residents of New Mexico. Doc. 1 ¶ 15.[5]

- Defendant EP Loya Group, LP's general partner, is Loya Insurance Group GP, LLC, a Delaware limited liability company. The sole member of Loya Insurance Group GP, LLC is The Alfredo Joseph and Maria Loya Living Trust, which does not have any beneficiaries who are citizens of the State of New Mexico. Defendant EP Loya Group, LP's limited partners are the Flor Maria Loya Trust and The Alfredo Jose Loya, Jr. Trust, neither of which have beneficiaries who are citizens of the State of New Mexico. Doc. 1 ¶ 16.[6]

- Defendants Young America Insurance Company, Rodney D. Young Insurance Agency, Inc., and Loya Insurance Company are Texas corporations with their principal place of business in Texas. Doc. 1 ¶ 17.

---

[5] Section 1441, Title 28 of the U.S. Code requires diversity of *citizenship*, and residency is not equivalent to citizenship. *See Siloam Springs Hotel, L.L.C. v. Century Surety Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015). A notice of removal that alleges only "residency" and not "citizenship" is insufficient to confer federal jurisdiction. *See McEntire v. Kmart Corp.*, No. 09cv567, 2010 WL 553443, at *8 (D.N.M. Feb. 9, 2010) (collecting cases). However, this defect is curable. *Hendrix v. New Amsterdam Casualty Co.*, 390 F.2d 299, 300-02 (10th Cir. 1968) (permitting amendment of notice of removal to allege citizenship, rather than mere residence, of the plaintiff). If the case remains in federal court, the Court will order the removing defendant to cure this defect.

[6] An LLC is a citizen of each and every state in which any member is a citizen. *See Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1237-38 (10th Cir. 2015). The citizenship of an LLC member who is a trust is determined with reference to the state law under which that trust was created. *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 382 (2016). "So long as such an entity is unincorporated . . . it possesses the citizenship of all its members." *Id.* at 383. The Notice of Removal fails to specify the state law under which the two trusts are formed and whether they are incorporated. It also fails to specify the citizenship of the trustees. *Cf. Conagra Foods, Inc. v. Americold Logistics, LLC*, 776 F.3d 1175, 1181 (10th Cir. 2015) (speculating that "all members" of a trust likely also includes trustees), *aff'd on other grounds*, 577 U.S. 378 (2016). Even assuming, however, that the Notice of Removal correctly treats these trusts as unincorporated entities which assume the citizenship of their beneficiaries, the Notice of Removal incorrectly relies on "negative" statements of citizenship (i.e., asserting a party is not a citizen of a particular state instead of asserting the that the party is a citizen of a particular state). A party invoking diversity jurisdiction must specifically allege the citizenship of each defendant, not just that a defendant is not a citizen of the same state as the plaintiff. *Cameron v. Hodges*, 127 U.S. 322, 322 (1888); *Dalton v. Teva N. Am.*, 891 F.3d 687, 690 (7th Cir. 2018); *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1226 (11th Cir. 2017); *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 125-26 (1st Cir. 2011). Therefore, the allegations in paragraph 16 of the Notice of Removal are not sufficient to support diversity jurisdiction even if the Court found fraudulent joinder. However, these defects are potentially curable, if the removing defendant possesses sufficient information to include positive allegations of the state law governing the trusts and the citizenship of each trust member.

- Defendant National Insurance is a trade name for Defendant Rodney D. Young Insurance Agency, Inc., a Texas corporation with its principal place of business in Texas. Doc. 1 ¶ 18.

- Defendant Mark Groves is a citizen of Texas. Doc. 1 ¶ 19.

- Defendant Yvette Lerma and Defendant Fred Loya Insurance Agency, Inc. are alleged to be citizens of New Mexico, but they are fraudulently joined. Doc. 1 ¶ 20.

Plaintiffs disagree with the assertion that Defendants Lerma and Fred Loya Insurance Agency are fraudulently joined. Accordingly, Plaintiffs filed this Motion to Remand to state court for lack of complete diversity between the parties. Doc. 11 at 1.

## LEGAL STANDARD

Fraudulent joinder requires the defendant to show an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013). "'The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff.'" *Id.* (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). Fraudulent joinder is "a high hurdle" to clear. *Id.* at 989. The question of fraudulent joinder is not the same as whether "plaintiffs have stated a valid claim" against the allegedly fraudulently joined party. *Id.* The fraudulent joinder standard "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." *Montano v. Allstate Indem.*, 211 F.3d 1278, at *2 (10th Cir. 2000) (unpublished table decision)[7] (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851-53 (3d Cir. 1992))."'To prove their allegation of fraudulent

---

[7] The Court cites unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

5

joinder the removing parties must demonstrate that there is no possibility that plaintiff would be able to establish a cause of action against the joined party in state court.'" *Id.* at \*1 (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 243 (5th Cir. 2000)) (alterations omitted).

"'A contention that the plaintiff has engaged in fraudulent joinder must be alleged with particularity by the party seeking removal, and supported by clear and convincing evidence.'" *Woods v. Ross Dress for Less, Inc.*, 833 F. App'x 754, 757 n.1 (10th Cir. 2021) (quoting 14C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure – Jurisdiction and Related Matters § 3723.1 (4th ed., July 2020 update)). The court does not examine all possible bases for a finding of fraudulent joinder; instead, it limits its analysis to the grounds the defendant raises. *See Dutcher*, 733 F.3d at 989 (confining its analysis to the grounds the defendant raised and noting defendant's failure to satisfy their burden is not the same as an affirmative finding that "Matheson and his law firm are not somehow fraudulently joined").

## DISCUSSION

This case involves two transactions: the purchase of a policy for the Kia Sentra in December 2014, and the addition of the Nissan Maxima to that policy in May 2015. Defendants focus on the first transaction while Plaintiffs focus on the second. Defendants focus on the first because Defendant Yvette Lerma was not involved in that transaction.

They allege in their Notice of Removal that Villasenor purchased an automobile liability insurance policy on December 12, 2014[8] from Defendant Young America Insurance Company for the policy period from December 12, 2014 through January 11, 2015. Doc. 1 ¶ 25. The policy would automatically renew each month that Villasenor made payments of the premium. *Id.*

---

[8] Paragraph 25 of the Notice of Removal mistakenly alleges this occurred on December 12, 2013. The context makes it clear this is a typographical error, and the declaration attached to the Notice of Removal avers this occurred on December 12, 2014. Doc. 1-5 ¶¶ 7-10.

Villasenor agreed to make monthly payments of premiums and agreed to the dates her credit card would have payments deducted from it. Doc. 1 ¶ 27. At this time, however, Lerma worked at a National Insurance location other than the Eubank location where Villasenor purchased this policy. *Id.* ¶ 28. Lerma apparently had no involvement in the December 2014 transaction. *Id.*

Nor do Plaintiffs contend that Lerma was involved in the December 2014 transaction. Instead, they focus on the May 6, 2015 transaction. They allege that, in May 2015, Lerma made misrepresentations in connection with adding the Nissan Maxima to Villasenor's pre-existing policy. Doc. 11 at 5-7; Doc. 26 at 4-5. Defendants' response is that paragraph 113 of Plaintiffs' Complaint, which contains the cause of action against Defendant Lerma, references her sale of a "policy" to Ms. Villasenor, and this paragraph does not specify the relevant time period. Doc. 18 at 2 (highlighting the allegation that Lerma "**made material misrepresentations and omission[s] in order to sell the policy at issue here to Ms. Villasenor**") (emphasis in Defendants' response brief, not the original complaint). [9] The precise language in Plaintiffs' allegation against Lerma matters, Defendants argue, because the only "policy" Defendants sold to Ms. Villasenor is the one sold in December 2014—the May 2015 transaction involved *adding* the Nissan Maxima to an *existing policy*, not the sale of a new policy. Doc. 18 at 5 ("Plaintiffs ignore their specific allegations against Defendant Lerma—that she made misrepresentations to Ms. Villasenor when she purchased the policy in December 2014."). Because Lerma was not involved in "sell[ing] the policy at issue here", Defendants assert, she cannot possibly be found liable; therefore, she has been fraudulently joined.

---

[9] Defendants' response mistakenly cites the source of this quotation as paragraph 112 of the Complaint. It is actually paragraph 113. Doc. 1-2 at 25-26. This does not affect the legal analysis.

Plaintiffs counter that their reference to the "policy at issue" in paragraph 113 was intended to be a reference to the May 2015 sale of insurance for the Nissan Maxima. And Plaintiffs continue, when read in context, their Complaint makes clear that they are alleging Ms. Lerma made misrepresentations in connection with the May 2015 transaction, not the December 2014 transaction. I agree with Plaintiffs. Consider the following relevant passages in the Complaint:

> 24. The month before Jaydon's drive-by shooting, on May 6, 2015, Felicia Villasenor went to Defendant National Insurance's location at 3420 San Mateo Boulevard Northeast in Albuquerque, New Mexico to purchase a mandatory insurance policy for the Nissan Maxima.
>
> . . . .
>
> 29. While at 3420 San Mateo Boulevard Northeast, Ms. Villasenor informed Defendant National Insurance's employees that she wanted an automotive insurance policy for the Nissan Maxima. Upon information and belief, Defendant Yvette Lerma then assisted Ms. Villasenor with completing an application.
>
> 30. Upon information and belief, Defendant Lerma gave Ms. Villasenor several papers to sign, including both an "Auto Policy Change Request" form and documents that invited her to waive stacking and uninsured/underinsured motorist coverage.
>
> 31. Upon information and belief, Defendant Lerma then inspected and photographed the Nissan Maxima in the parking lot of 3420 San Mateo Boulevard Northeast, then signed a "Vehicle Inspection Report" attesting to the visual inspection she performed.
>
> 32. The "Auto Policy Change Request" form with which Ms. Villasenor was provided requested coverage for the Nissan Maxima from the same insurer that had previously insured Ms. Villasenor's Kia Spectra: Defendant Young America.
>
> 33. The other documents that Ms. Villasenor was given listed the different "premium and maximum limits for a six month policy," providing specific dollar amounts (marked as "Total Premium") that Ms. Villasenor would have to pay for six months of coverage. No policy periods besides six months were suggested on the forms. Ms. Villasenor signed these forms that quantified her six-month premiums.
>
> . . . .
>
> 105. The Plaintiffs incorporate by reference all the foregoing allegations.

. . . .

113. Defendant National Insurance, while operating under a name which
deceptively implied or suggested that it was an insurer when it is not, *cf.* NMSA
1978, § 59A-16-26, or Defendant Yvette Lerma while acting on behalf of
Defendant National Insurance, made material misrepresentations and omissions in
order to sell the policy at issue here to Ms. Villasenor. These misrepresentations
and omissions included giving its insured documents indicating that the policy
was for a six-month period when the Loya Defendants (including the nominal
insurer, Defendant Young America, and Defendant Fred Loya via its adjusters)
intended to claim the coverage was for a one-month period, and representations
that the insured would receive a minimum of ten days' notice before her policy
could be cancelled when the Loya Defendants intended to claim the policy could
be cancelled without any such notice.

Compl. ¶¶ 24, 29-33, 113.

These passages support Plaintiffs' argument that, when read in context, their Complaint

alleges Defendant Lerma made misrepresentations in connection with the May 2015 sale of

insurance related to the Nissan Maxima (the car involved in the underlying drive-by-shooting

lawsuit) rather than the December 2014 sale of a policy in connection with a different car.

Reading the Complaint as a whole, in combination with paragraphs 24 and 29 through 33 (which

Count I incorporated by reference, Compl. ¶ 105), the claim against Lerma obviously relates to

the May 2015 transaction. Regarding their use of the phrase "policy at issue" in paragraph 113,

Plaintiffs argue, "Defendants have not shown that, under New Mexico notice-pleading standards,

the words 'policy at issue here' could not be read as 'the policy as modified to include coverage

on the Nissan Maxima.'" Doc. 26 at 3. I agree that, taken as a whole, the most natural reading of

paragraph 113 is that the allegations against Lerma relate to the May 2015 transaction, not the

December 2014 transaction. It appears this is also how Defendants originally read this paragraph.

In their Notice of Removal, they summarized Plaintiffs' allegations against Lerma as follows:

"the gist of claims against Defendant Lerma appear to be that in May 2015, she somehow fooled

Ms. Villasenor into believing that she was purchasing a six month policy instead of a policy that

would provide coverage for one month, conditioned upon making monthly payments." Doc. 1 at 8.[10] True, neither paragraph 33 nor paragraph 113 specifically mention the May 2015 date. But paragraph 33 directly follows the paragraphs discussing the May 2015 transaction. Thus, the allegations about the misleading paperwork clearly relate to the May 2015 transaction. And all of these paragraphs are then incorporated by reference into paragraph 113. In contrast, nowhere does the Complaint allege that Lerma made misrepresentations in December 2014. Instead, in paragraphs leading up to paragraphs 33 and 113, the Complaint alleges that Lerma gave Villasenor paperwork in 2015. Compl. ¶¶ 24, 29-32. Paragraphs 33 and 113 then refer to the misrepresentations Plaintiffs allege Lerma made in the paperwork she gave to Villasenor. Compl. ¶¶ 33, 113.

Defendants' second argument goes to the merits of Plaintiffs' claim. They argue that the *monthly* term of the policy was fixed by the December 2014 transaction—the one Lerma had nothing to do with. Doc. 18 at 2-3 ("Ms. Villasenor's agreement to a monthly policy (automatically renewing each month as premiums were paid) as opposed to a six-month policy, or any representation that there would be a ten-day notice before cancellation" occurred "six months before her interaction with Defendant Lerma."). In support of their merits argument, Defendants point out that "they submitted declarations establishing that Defendant Lerma was not, and could not have been, involved in the sale of the policy to Ms. Villasenor, including Ms.

---

[10] In their Motion to Remand, Plaintiffs clarify how they allege Lerma fooled Ms. Villasenor: "Lerma's personal role in selling this coverage is significant, because the materials given to Ms. Villasenor during that interaction refer to 'a six month policy' . . . . And yet, the Notice of Removal indicates that the Defendants—presumably including Defendant Lerma—intend to assert as a defense that the policy period was only supposed to be *one* month, not six." Doc. 11 at 7.

Villasenor's agreement to a monthly policy (automatically renewing each month as premiums were paid) as opposed to a six-month policy, or any representation that there would be a ten-day notice before cancellation." Doc. 18 at 2-3 (citing Doc. 1, p. 6-7, ¶¶ 25-29). This declaration, however, appears to address the December 2014 transaction rather than the May 2015 transaction. Therefore, the declaration does not bear on Plaintiffs' theory of liability and provides no assistance to Defendants' fraudulent joinder argument. Notably, Defendants provided no declaration stating that Lerma was not involved in the May 2015 transaction, which is the transaction at the heart of Plaintiffs' claim.

Instead of submitting such a declaration, Defendants point to a lack of evidence supporting Plaintiffs' claim: "The problem Plaintiffs face is that the allegations in the Complaint regarding what happened between Ms. Villasenor and National Insurance with respect to Ms. Villasenor's purchase of the policy are not based on anything said by anyone who was involved in that transaction, in particular Ms. Villasenor who has never accused anyone associated with Defendants of misrepresenting anything." Doc. 18 at 5. Again, however, the Court reads Defendants' reference to "the purchase of the policy" to focus on the December 2014 transaction, rather than the May 2015 transaction, and so this argument is misdirected.

Further, this case is not currently before the Court on summary judgment, where evidence matters. It is not even before the Court on a motion to dismiss, where the question would be whether Plaintiffs' allegations state a claim. Instead, it is before the Court on a fraudulent joinder allegation, where it is Defendants' heavy burden to demonstrate there is no possibility Plaintiffs could prevail against Lerma. Plaintiffs have alleged that, when Lerma sold Villasenor automobile insurance in May 2015, she provided Villasenor with documents indicating that the insurance was part of a 6-month policy and represented to Villasenor that she would receive a minimum of

ten days' notice when, in fact, the insurance was a monthly policy and Defendants intended to claim the policy could be cancelled without any such notice. Doc. 1-2 at ¶ 113.  Assuming the truth of these allegations, Defendants have failed to demonstrate that Plaintiffs could not possibly prevail against Lerma in their claim that Lerma violated the Trade Practices and Frauds Act of the Insurance Code.[11]

Because Plaintiffs did not fraudulently join Lerma, the Court need not address Defendants' additional argument that Plaintiffs fraudulently joined Fred Loya Insurance Agency, Inc. That is because the inclusion of Lerma destroys diversity on its own. Nor should the Court address the issues raised regarding Fred Loya Insurance Agency, as those are disputed issues of pure state law, such as piercing the corporate veil. These issues should be left to the state courts to adjudicate in the first instance. *Montano*, 211 F.3d 1278, at *1 (discussing "the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced").

Finally, the Court should deny Plaintiffs' request for attorney's fees. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Plaintiffs' Complaint was not as clear as it could have been. Plaintiffs referred to Lerma's sale of a "policy," not the amendment of an existing policy, and did not identify in the same paragraph whether that allegation referred to the December 2014 transaction or the May

---

[11] There is no dispute that New Mexico insurance law imposes individual liability on insurance brokers in certain circumstances. *Martinez v. Cornejo*, 2009-NMCA-011, ¶ 13, 208 P.3d 443.

2015 transaction. Defendants' focus on the word Plaintiffs used—"policy"—to argue that Plaintiffs' allegations against Lerma must have been referring to the December 2014 sale of the policy to Ms. Villasenor, in which Lerma indisputably was not involved, was not objectively unreasonable.

<u>**CONCLUSION**</u>

I recommend the Court grant the Motion to Remand (Doc. 11) and remand this case to state court.

STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

13